Mr Justice Thompson,,
dissentiente. — This case comes, before usiunder the.25th ’Section of the judiciary act of 1789, *474 on a writ of error to the constitutional court of the state of South Carolina, the highest coürt of appeals in that state. The question in the state court arose upon proceedings commenced in an inferior court; and the issuing of a prohibition to restrain the city council of Charleston, and all other, persons acting under their authority, from levying and collecting a tas on stock of the United States, held by the appellants; on the ground, that such tax was a violation of the. constitution of the United States. The prohibition having'been^ranted by the. inferior court, the order andjudg-nient of that court , were reversed in the constitutional Gourt, thereby upholding the constitutionality of the tax.
A preliminary question has been raised, whether this Court has jurisdiction of the case, under the 25th section of thfe judiciary act. I think we have not. It is not a suit within the meaning of that section; and if it was; the writ of error is brought to reverse a judgment, refusing to grant,the prohibition. And if that judgment or order should be reversed here, this Court has no power to enforce its judgment; or give the party any relief or protection against the imposition of the tax.- But I shall not enter into an examination of this question: it is one of minor importance; as I understand. this Court does not claim the power of enforcing its judgment in any manner whatever, and the ordinance will remain in full force, and the payment of the tax be enforced unlessthe city council shall voluntarily repeal it, and revoke the order to collect the tax. The judgment of this Court is,' therefore, no more than an opinion expressed upon an abstract question, and in its nature and effect only monitory.
In considering this case on the merits, it is to be borne in mini, that this ordinance of the city council is subject to be repealed by the legislature of South Carolina, and not having befen done, we must consider it as having tacitly received the sanction of the legislature, and comes before us, therefore, with all the force and authority of a state law, and involves one of those delicate and difficult inquiries of conflicting powers between the general and state governments.
It is.neeessary, in the .first place, that we should understand the true character of this tax. Much importance seemed to *475 be attached to this, both in the court below and on the argument here. In the opinion of the minority of the state court, which has been submitted to us by the appellants’ council as a part of his argument, it is said, “ this ordinance does not affect to regard the tax as an income tax. It is a tqx upon the United States stock eo nomine. As it is not a tax on income; it is unnecessary to inquire, if the city council or a state have the power to tax income, and include therein the interest received on United States stock. The... inquiry is, whethér there is, any such power to tax United States stock eo nomineThis distinction being so emphatically relied upon by the minority of the Court* it is a fair inference, that if-it had been considered a tax on'incomé, it would not be objectionable on constitutional grounds. .
What are we to understand by its being a tax op United States stock eo nomine ? Certainly, nothing more than that it is enumerated as one. description, in a long list of specified property subject to taxation.
We have not the ordinance at large before us, but the clause upon which the question arises, is stated as follows : All personal estate, consisting of bonds, ..notes, insurance stock, &c. &e. six and seven per cent, stock of. the United States, or other obligátions, upon which interest has been, or will be received during the year, over and above the interest which has been paid, twenty-five cents on every hundred dollars. There is excepted out of this enumeration, stock of the state, stock of the city, and bank stock. But this exception cannot certainly affect the present question. No part of the constitution of the United States, prohibits the states from exempting from taxation certain, species of property, according to their own views of policy or expediency.
What then is the ordinance in substance % It is a tax upon, the net income of interest, upon money secured by, bonds, notes, insurance stock, six and seven per cent, stock of the United States, or other obligations, upon wjiich interest has been received, &c. It is the net interest received upon ¡which the tax is laid. For the ordinance declares the tax shall be oñ the interest, received over and above that *476 which has been paid. For example : he who receives.$1000 interest, and. pays out $500 interest, is taxed only upon, the balance. It is, therefore, a general tax upon an income from money at interest, and this too only included as one iterate the enumeration of taxable property. It is not an objection that can be made’ here, if any where, that the tax is not upon the whole income. It is a tax, general in. its. application to income, from interest derived from investments of every description (with the exception mentioned):and money.on loan. It cannot be considered as an exorbitant tax, or in any manner partaking of the character of a penalty. It being only a tax of a quarter of one per cent.
If the objection to this, tax is to be sustained, it must; be on the broad ground that stock of the United States is not taxable in any shape or manner whatever; that it is not to 'be included in the estimate of property subject to taxation: and that I understand is the extent to which a majority of this Court mean to carry the exemption. As I am unable to come to this conclusion, and it being a constitutional question of vital importance; I am constrained to dissent. from the opinion of the Court, and, contrary to my usual practice.in ordinary cases, briefly to.assign my reasons.
I shall, for the reason already mentioned, consider this ordinance as standing upon the same grounds precisely as if it had been a law of the state of South Carolina.
It is not pretended, that there is any express prohibition in the constitution of the United.States, which has been violated by this law.
The only express limitation to the power of the individual states, to lay and collect taxes, is to be found in the 1.0th section of the first article of the constitution. “No state shall, without the consent of congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing Its inspection laws, &c, No state shall, without the consent of congress, lay any duty of tonnage.” The, tax in question can certainly not fall within either of these prohibitions.
The objection to the tax is rested chiefly, if not entirely, upon that part-of the 8th section .of the first article, which *477 gives to congress the power “ to borrow money on the efedit of the United States.” And it is said that to permit the states to tax the stock, might, by possibility, sometimes embarrass the United States in procuring loans. In the examination of the powers of the general government under the constitution “ The Federalist” is often referred to. as a work of high authority on questions óf this kind; and the author has seldom been charged with surrendering any powers that can-be brought fairly within the letter or spirit of the-constitution. In No. 32 of that work, the writer, in discussing the subject of taxation, and the conflicts that might arise between the general and state governments; says, “Although I am' of opinion that there would be no real dangerof the consequences to the state governments, which séém tó be apprehended from a power in the union to control them in the levies of money, yet I am willing to allow, in its full extent, the justness of the reasoning, which' réquires that the individual, states should possess an independent and uncontrollable authority to raise their own revenues for the Supply of their own wants. ; And making this concession, I affirm, that (with the sole exception of duties on imports ¿nd exports) they would, under the plan of the convention, retain that authority, in the most absolute and unqualified sense; and that an attempt on the part of the", national government-to abridge them in--the exereise of it, would be a violent Assumption of power, unwarranted'by any article or clause of its constitution. That a negation of the authority of the states to impose taxes on imports and exports, is án affirmance of their authority to imposé them on all other articles. That it is not a mere possibility óf incópveniéneé in thé ex*-elrcisé of powers, but an immediate constitutional repug-nancy, that can by implication alienate and extinguish a pre-existing right of sovereignty.”
The powér of the general government to borrow money, -on the credit of the United States, is not only an express power granted to congress, but'one that it must have been foreseen would be brought into practical operation, and that stock would of course"be created; and yet it never entered into the discriminating mind of the writer referred *478 to, that merely investing property, subject to taxation» in stock of the United States, would withdraw the property from taxation. It is said, the credit of the United States is a creation of the general government, which did not exist until they brought it into being,' and in the production of which the state governments did not participate;'that the states could not tax it hefore the constitution was formed, for it did not exist. This view of the subject is calculated to make an erroneous impression. It is true it did not exist in the shape of stock, but the property existed in some other form. No one procures stock without exchanging for it an equivalent in money or some other property; all which was, doubtless, subject to the payment of taxes. Exemption from taxation may hold out an inducement to invest property in stock of the United States, and might, possibly, enable the government to procure loans with more , facility, and perhaps on better terms. But this possible, or even certain benefit to the United States, cannot extinguish preexisting state rights. To consider this a tax upon the means employed by the general governmént for carrying on its operations, is, certainly, very great refinement. It is not a tax that operates directly upon any power or credit of the United States. The utmost extent to which the most watchful jealousy can lead is, that it may, by possibility, prevent the government from borrowing money on quite so good terms. And. even this inconvenience is extremely questionable; for the stock only pays the same tax that the money with which it was purchased did. And whether the property exists in one form or the other, would seem to be matter of very little importance to the owner. But great injustice is done to others, by exempting men who are living upon the interest of their money, invested in stock of the United States, from the payment of taxes; thereby establishing a privileged class of public creditors, who, though living under the protection of the government, are exempted from bearing any of its burthens. A construction of the constitution, drawing after it such consequences, ought to be very palpable before it is adopted.
But it seems to me, that the right of the states to tax pro *479 perty of this description is admitted by the Court, in the case of M’Cullough vs. The state of Maryland, 4 Wheat. 436. The Court there considered the tax imposed directly upon the operations of the bank, which was employed by the government as one of the means of carrying into execution its constitutional powers; and in summing up the result, it is said, the states have no power by taxation, or^otherwise, to retard, impede, burthen, or in any manner control the operations of the constitutional laws of congress,, to carry into execution the powers vested in the general government; and yet, the. Court say this opinion does not extend to á tax paid by the real property of the bank, in common with the other real property within the state, nor to a tax imposed on the i nterest which the-citizens of Maryland may hold in the bank, in common with other property of the same , description throughout the state.
In the case now before us, the tax isTiot direct upon any means used by the government to carry on its operation. It is only a tax upon property acquired through one of the means employed by the government to carry on its operations, viz. the power of borrowing money upon the credit of the United States; and it is not perceived how any just distinction can be made in this respect, between bank stock,. and stock of the United Stat.es; both aré acquired through the medium of means employed by the government in carrying on its operations; and both are held as private property ; and it is immaterial io the present question in what manner it was acquired.
The broad proposition (laid down in the cage of M’Cullough vs. The state of Maryland) that the states cannot tax any-instrument or means used by the general government in the execution of its powers, must 'be understood as referring to a direct tax upon such means or instrument; and that such was the understanding of the Court, is to .be inferred from the exemption of bank stock from the operation of the rule; and the parallel cases put to illustrate the application of the .doctrine lead to the same conclusion. Thus it is said the states cannot tax the mint ; but this does not imply that they may not tax the money coined at the mint, when held and owned by individuals. Again, it is said the states cannot *480 tax a patent right; but if the patentee, from the sale or use ofhis patent has acquired property, or is receiving an income, it could not be intended to say that such property or income cannot be taken into the estimate of his taxable property.
The unqualified proposition that a state cannot directly or indirectly tax any instrument or means employed by. the general government in the execution of its powers, cannot be literally sustained. Congress has power to raise armies, súch armies are made up. of officers and soldiers, and arp instruments employed by the government in executing its powers; and although the army, as such cannot be taxed, yet it will not be claimed, that all such officers and soldiers are exempt from state taxation. Upon the whole, considering that the táx in question is a general tax upon the interest of money .on loan, I cannot think it any violation of the constitution of1 the United States, to include therein interest accruing from stock of the United States.
I am accordingly of opinion, that there is no error in the opinion of the state court.
This cause came on to be heard on the transcript of the record from the constitutional court of the state of South. Carolina, and was argued by counsel; on consideration . whereof, this Court is. of opinion; that there is error in the judgment of thé said court in this, that the said court decided that, an ordinance passed by the city council of Charles-. ton for the year 1823* entitled, an ordinance to raise supplies for the use of the city of Charleston for the year 1823, is, so far as the same imposes a tax on the six and seven per cent, stock of the United States, consistent with the constitution of the United Statés. Whereas, it is; the opinion of this Court,.that so much of the .said ordinance as imposes the said tax, is repugnant to the. constitution of the United States, and void. Whereupon it is. considered,, ordered and adjudged by this Court, that the said judgment be, and the same is hereby reversed and annulled, and that the said cause be, and the same is hereby remanded to the Said constitutional court for the state of South Carolina, that such further proceedings may be had therein as may consist with law and justice.